IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | |
|---|---|
| ORBIS SIBRO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-589 |
| ) | (Judge Horn) |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal claims, defendant, the United States, respectfully requests the Court to dismiss the complaint of Orbis Sibro, Inc. (Orbis) for lack of subject matter jurisdiction. As we demonstrate below, pursuant to the Federal Acquisition Streamlining Act (FASA), this Court lacks jurisdiction to consider protests of delivery order contracts except where the protest is "on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." 10 U.S.C. § 2304c(e). Orbis's protest, however, is limited to whether the United States Department of the Navy (Navy) properly evaluated the proposals. In these circumstances, the protest is barred by FASA. *See, e.g., Solute Consulting v. United States,* 103 Fed. Cl. 783, 794 (2012) ("the exception to the task order protest bar does not encompass challenges to proposal evaluations"); *Bay First Solutions LLC v. United States,* 104 Fed. Cl. 493, 502 (2010) (same). Accordingly, Orbis's complaint should be dismissed for lack of jurisdiction.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

I.   Nature Of The Case

This case involves Orbis's protest of the award of a delivery order contract pursuant to the SeaPort-e program, a multiple award contract vehicle to acquire support services in twenty-two functional areas.  Complaint (Compl.) at p. 1 (Preliminary Statement); Solicitation, Cover Sheet and Section L (referring to SeaPort-2 Portal Site); *see also Solute Consulting* 103 Fed. Cl. at 784.[1]  Solicitation N00024-14-R-3154 was for a "cost-plus-fix-fee task order contract . . . for support services to support the NAVSUP Acquisition Logistics Program Office's mission of maintaining continuity of ship design, systems engineering, and related cost and readiness factors."  Compl. at p. 1 (Preliminary Statement); Compl. and Exhibit A, p. 7.  Orbis, the incumbent contractor, contends that the Navy acted arbitrarily, capriciously, in an abuse of discretion, and contrary to law because it improperly adjusted Orbis's cost proposal upward, made an unreasonable relevancy determination as to Orbis's experience, and violated FAR § 15.306(a)(2) by not giving Orbis an opportunity to comment on adverse past performance information.

---

[1]   The Solicitation is attached to the complaint as Exhibit A.  The Cover Sheet appears at page 1 of Exhibit A.  Section L appears at page 42 of Exhibit A. As noted on the Seaport-e Program website: "SeaPort-e is the Navy's electronic platform for acquiring support services in 22 functional areas including Engineering, Financial Management, and Program Management.  The Navy Systems Commands (NAVSEA, NAVAIR, SPAWAR, NAVFAC, and NAVSUP), the Office of Naval Research, the United States Marine Corps, and the Defense Threat Reduction Agency (DTRA) compete their service requirements amongst 1800+ SeaPort-e IDIQ multiple award contract holders."  www.seaport.navy.mil.

Compl., ¶ 8.[2]  Orbis seeks a declaration that the Navy misevaluated its proposal, and preliminary and permanent injunctive relief requiring the Navy to suspend the award to Logistics Support Incorporated (LSI) and reevaluate the proposals. Compl., Counts VIII and IX.

II.   The Complaint

In count 1 of the complaint, Orbis alleges that, "Although the Contracting Officer's observation that '[m]any of your rates were quoted based on 2280 hours per year' was correct, the Contracting Officer overlooked that Orbis had proposed 2080 hours of work plus 200 hours of paid time off to reach the 2280 hours."  Compl., ¶ 13.  According to Orbis, "[t]he addition of 200 hours of paid time off to the existing 2080 hours of work rendered Orbis' cost proposal as compliant with Defense Contract Audit Agency's approved procedures to account for uncompensated overtime."  *Id.*, ¶ 14. Thus, in count I, Orbis alleges that the Navy acted arbitrarily and capriciously in the manner in which it evaluated Orbis's cost proposal.

In count II of the complaint, Orbis alleges that the cost realism analysis, required by the Solicitation, was to "'determine what the Government should realistically expect to pay for the proposed effort.'" Compl., ¶ 19, quoting FAR § 15.305(a)(1).  Orbis contends that the upward adjustment to its cost proposal was invalid because the Navy, after conducting the cost realism analysis, "never determined that Orbis's proposed costs were unrealistic."  Compl., ¶ 20.  In fact, Orbis suggests the costs in its cost proposal

---

[2]  Although this procurement was conducted pursuant to FAR, Part 16, which relates to cost- plus-fixed-fee task order contracts, and not FAR Part 15, this issue is not relevant to the instant motion.

were realistic because they "reflected what the Government should realistically expect to pay." FAR § 15.305(a)(1).

In count III of its complaint, Orbis quotes the Solicitation's statement that "If an offeror decides to include uncompensated overtime in its proposal, the FAR clause at 53.237-10 and the Section B clause entitled 'Identification of Ratios' will apply during the performance of any resultant contract." Compl., ¶ 23. According to Orbis, its cost proposal "complied with FAR clause 52.237-10" and, therefore, the upward adjustment was invalid. Compl., ¶ 25. Thus, Orbis alleges that the Navy acted arbitrarily and capriciously because its upward adjustment was inconsistent with FAR clause 53.237-10.

In count IV, Orbis alleges that "[b]y the Navy relying on the adverse past performance information set forth in Exhibit C [of the complaint] without giving Orbis an opportunity to comment on the adverse past performance information, the Navy violated FAR § 15.306(a)(2)." Compl., ¶ 33.

In count V, Orbis alleges that the Navy's evaluation of its past performance was arbitrary and capricious because "the evaluators did not give meaningful consideration to CPARS (Contractor Performance Assessment Reporting System) when evaluating Orbis's three most relevant contracts . . . " Compl., ¶ 39.

In count VI, Orbis alleges that because the work it performed under the expired, predecessor contract was "strikingly similar" to the work being bid, "it was arbitrary, capricious and an abuse of discretion for the evaluators not to have rated Orbis's corporate experience as 'very relevant.'" Compl., ¶ 41.

In count VII, Orbis alleges that the best value decision was "fundamentally flawed" because its proposal was improperly evaluated on price, relevant experience, and past performance. Compl., ¶ 44.

III.  THE RELEVANT STATUTE

FASA provides, in relevant part, as follows:

> (e) Protests.
>
> (1) A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for -
>
> (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or
>
> (B) a protest of an order valued in excess of $10,000,000.
>
> (2) Notwithstanding section 3556 of title 31 (31 U.S.C. § 3556, the Comptroller General of the United States shall have exclusive jurisdiction of a protest under paragraph (1)(B).

10 U.S.C. § 2304(c).

Pursuant to FASA, therefore, a protest in connection with a delivery order contract valued under $10,000,000 "is not authorized" unless the protest is on the ground that the delivery order "increases the scope, period, or maximum value of the contract under which the order is issued."

ARGUMENT

The delivery order in this protest is under $10,000,000. Compl., p. 5 (Table). Also, the delivery order is authorized under the SeaPort–e program. Compl., p. 1 (Preliminary Statement). Therefore, Orbis's protest is subject to the FASA.

I.      Standard Of Review

"As a matter of law, the court must consider jurisdiction before reaching the substantive merits of a case." *SRA International, Inc. v. United States,* 114 Fed. Cl. 247, 251 (2014). When deciding a motion to dismiss under RCFC 12(b)(1), the Court "assume[s] all factual allegations [in the complaint] to be true and draw[s] all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted); *see also Hall v. United States,* 74 Fed. Cl. 391, 393 (2006). However, the Court may look to evidence outside the pleadings to determine whether subject matter jurisdiction exists. *Land v. Dollar,* 330 U.S. 731, 735 & n. 4 (1947). "Plaintiffs bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence before the Court proceeds to the merits of the action." *Rogers v. United States,* 95 Fed. Cl. 513, 515 (2010) (citation omitted); *see. e.g., McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988); *O. Ahlborg & Sons, Inc. v. United States, appeal dismissed*, 219 F. App'x 992 (Fed. Cir. 2007). "If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss the complaint. *SRA International,* 114 Fed. Cl. at 790.

II.      This Court Lacks Jurisdiction Because Orbis Does Not Allege That The Scope Of The Work Exceeds The Scope Of The SeaPort-e Program

As demonstrated, Orbis's complaint is limited to protesting the Navy's evaluation of Orbis's proposal for a delivery order contract issued under the SeaPort-e Multiple Award Indefinite Delivery Indefinite Quantity (IDIQ) Program. Orbis does not specifically allege that the protest is within one of the exceptions in FASA allowing judicial review of delivery orders, and Orbis concedes that its complaint is a protest of a

delivery order issued pursuant to the SeaPort-e Program. Compl. at p. 1(Preliminary Statement). Given that FASA only authorizes judicial review of delivery orders in narrow circumstances, Orbis's failure to allege one of these circumstances suggests that it was unaware of the FASA limitations.[3] If Orbis was unaware of FASA and is not able to allege that its protest falls within one of the exceptions in FASA, this Court is not authorized to entertain the protest. 10 U.S.C. § 2304c(e). Even if Orbis attempts to argue that the Navy's alleged improper evaluation of its proposal fits within one of the FASA exceptions, its legal position is contrary to *Solute Consulting* which correctly held that "the exception to the task order protest bar does not encompass challenges to proposal evaluations . . . " 103 Fed.Cl. at 94. Either way, this Court is not authorized to entertain the protest and our motion must be granted.

III.  There Is No Question The Protest Is "In Connection With The Issuance Or Proposed Issuance Of A Task Or Delivery Order"

As demonstrated above, Orbis challenges the Navy's evaluation of its proposal and seeks a declaratory judgment that the Navy misevaluated its proposal and a preliminary and permanent injunction suspending the award to LSI and reevaluating the proposals. Compl., Counts VIII and IX. The protest thus seeks to overturn the award and is based on the Navy's conduct of the procurement. Therefore, it clearly is "in connection with the issuance . . . of a delivery order." *See. e.g., SRA International,* 114 Fed. Cl. at 255 ("[A] challenge to an award of a task order is subject to the FASA bar"); *Bay First Sollutions,* 104 Fed. Cl. at 502 ("This court has consistently interpreted the

---

[3] During the initial status conference, the Court suggested that plaintiff's counsel did not appear to have done due diligence prior to filing the complaint. Therefore, it is plausible plaintiff's counsel failed to take FASA into account when he filed the complaint.

7

[FASA] ban as prohibiting task order protests in this court on any grounds[,] other than the specific excepted allegations of excessive scope, period, or value of the proposed task order"); *MORI Assocs., Inc. v. United States*, 113 Fed. Cl. 33, 37-38 (2013) (dismissing a protest of any agency's decision to obtain services by issuing a task order); *Chameleon Integrated Servs. Inc. v. United States,* 111 Fed. Cl. 564, 570-71 (2013) (determining that the court does not have jurisdiction to adjudicate a bid protest concerning a task order); *Mission Essential Pers., LLC v. United States,* 104 Fed. Cl. 170, 179 (2012) ("[C]orrective action relates to, and is connected with, the issuance of a task order"). Indeed, if Orbis's protest is not "in connection with the issuance of a . . . delivery order," it is difficult to imagine what protest would be. Accordingly, the Court should dismiss Orbis's complaint for lack of subject matter jurisdiction.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our motion and dismiss Orbis's complaint for lack of jurisdiction.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL

DIANE-MARIE CARRERO
Counsel
NAVSUP Fleet Logistics Center, Norfolk
Philadelphia Office

FRANKLIN  E. WHITE, JR.
Assistant Director

DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

Ben Franklin Station
P.O. Box 480
Tel: 202-307-0309
Fax: 202-514-7679
Washington, D.C. 20044

Date: July 14, 2014                    Attorneys for Defendant